UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| MONICA SALCIDO | ANNE KIELWASSER | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Brian Grossman | Martha Doty |

**Proceedings:** **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(filed January 14, 2013)

## I.    INTRODUCTION

Plaintiff filed this case in Los Angeles County Superior Court on October 5, 2011, against defendant DG FastChannel, Inc ("DG").  Defendant removed the case to this Court on November 4, 2011.  After the Court granted defendant's motion to dismiss with leave to amend, plaintiff filed her First Amended Complaint ("FAC") on December 23, 2011.  The Court denied defendant's motion to dismiss plaintiff's FAC on February 16, 2012, Dkt. No. 23, and thereafter granted plaintiff leave to file the operative Second Amended Complaint ("SAC") on October 29, 2012, Dkt. No. 43.  Plaintiff's SAC asserts three claims for relief: (1) negligent misrepresentation, (2) wrongful termination, and (3) breach of the implied covenant of good faith and fair dealing.

On January 14, 2013, defendant filed a motion for summary judgment.  Dkt. No. 54.  Plaintiff filed an opposition on January 30, 2013, Dkt. No. 57, and defendant replied on February 11, 2013.  Dkt. No. 58.  The Court held a hearing on February 25, 2013.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff's claims arise out of her termination in August 2011 from her position as a sales director at defendant's digital advertising business.

In 2009, plaintiff was a top performer at a rival digital advertising company, EyeWonder, with much of her success coming from advertising sales to the motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

picture industry.  Sevigny Decl. ¶ 2.[1]  Recognizing this success, EyeWonder bestowed upon her the title of "Senior Sales Executive" in April of 2009, at which time EyeWonder and plaintiff entered into a new "Employment Agreement."  Sevigny Decl. ¶ 4; Ex. 61. Pursuant to this written contract, plaintiff agreed not to solicit or compete with EyeWonder during or after her employment.  DG 1516, §§ 5(e) and 5(f).  Plaintiff had no plans of leaving her position at EyeWonder at that time, although she was "getting frustrated" that she was not being promoted or "growing within the company."  Sevigny Depo. 101:20–102:10.

Shortly thereafter, Mark Calabrese, a recruiter acting on behalf of Unicast, a division of defendant, contacted plaintiff to weigh her interest in leaving EyeWonder.  At that time, Unicast was seeking to increase its advertising sales to the film industry, which made plaintiff a particularly attractive potential employee.  Calabrese Depo. 9:5–10:8.  At first, plaintiff rebuffed Calabrese's inquiries, but she eventually reconsidered in or around September 2009.  Sevigny Decl. ¶ 6.  During the course of their discussions, plaintiff informed Calabrese about her concerns regarding the non-compete clause in her employment contract, and the fact that EyeWonder would possibly file suit to enforce the non-compete and solicitation clauses if she went to work for a competitor.  Calabrese Depo. 14:17–15:10.  Calabrese relayed these concerns to Fred Tietze, Vice President of Sales for Unicast, Calabrese's chief contact at defendant.  Id. at 19:7–15.  In addition, Sevigny communicated her concerns directly to Tietze, telling him that she would not accept employment with Unicast unless she received confirmation that the non-compete clause was "null and void."  Sevigny Decl. ¶ 7; Tietze Depo. 35:21–36:1.  She also asked whether Unicast would defend her in the event EyeWonder brought suit; she expressed her disinclination to join Unicast unless it promised to defend her in the event such a suit was filed.  See Depo. of Lori Stevens 13:5–22;24:5–11; 26:25–29:13; Sevigny Decl. ¶ 7.

Sevigny's concerns led to several rounds of internal communication at Unicast. Pl.'s Exs. 49-2, 49-3, 49-6, 49-9; see also Pl.'s Exs. 1-1, 1-2, 2, 4.  In addition to recounting Sevigny's concerns regarding her non-compete clause, Unicast managers stated that Omar Choucair, the Chief Financial Officer at DG, had the ultimate responsibility for determining whether or not Unicast could commit to hiring Sevigny.

---

[1] The Court overrules defendant's objections to the Sevigny Declaration on hearsay and foundation grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

See, e.g., Pl.'s Exs. 1-1, 1-2; Ex. 2 (e-mail describing the need to "call Omar directly to discuss your concerns/questions about the EyeWonder non-compete").  As a matter of company policy, Choucair and Unicast's president, Adam Moore, stated that any prospective hire who may be burdened by a non-compete clause had to be cleared with Choucair.  Choucair Depo. at 50:5–51:4; Moore Depo. 40:10–21.

After a satisfactory review of the non-compete clause in Sevigny's EyeWonder employment contract by outside counsel, Choucair advised Moore and Tietze that they could proceed with the hiring process in October 2009.  Choucair Depo. at 54:24–57:10.  Sevigny's concerns regarding the enforceability of the non-compete clause were allegedly addressed at an October 13, 2009 meeting, where Tietze told Sevigny that if EyeWonder did sue Sevigny, "then DG would have its attorneys defend [her]."  Sevigny Decl. ¶ 8; see also SAC ¶ 29.  Tietze, on the other hand, testifies that he told Sevigny that DG "will stand by her and support her" in the event EyeWonder chose to try and enforce the non-compete clause, but did not remember any "conversation about any legal discussions or defending her. . . ."  Tietze Depo. at 82:10–84:21.  None of the other executives at DG or Unicast involved in Sevigny's hiring recall providing Tietze with any specific instructions with respect to what to communicate to Sevigny regarding DG's willingness to defend her in the event that litigation ensued.  See, e.g., Tietze Depo. at 50:13–25, 59:5–60:13, 74:24–75:7; Choucair Depo. at 61:12–62:12; 66:23–67:17; Moore Depo. at 49:7–25; 52:14–54:8; Pl.'s Ex. 20.  In reliance on the alleged representations that Tietze made, and after her own independent research regarding the enforceability of covenants not to compete, Sevigny accepted a position at Unicast on November 24, 2009.  Sevigny Decl. ¶ 9 and Exs. 8 (DG Offer Letter) and 9 (DG Employment Agreement); see Doty Decl. Ex. F., Sevigny Depo. 107:20–109:16.  Sevigny's new position as West Coast Sales Director for Unicast was more senior and offered a higher salary then her previous one, in addition to covering a larger sales territory.  Sevigny Depo. 278:12–279:24, 232:20–24.

Apparently unbeknownst to Sevigny, DG and EyeWonder were engaged in negotiations regarding DG's potential acquisition of EyeWonder at the time of Sevigny's hiring.  Depo. of Scott Ginsburg, CEO of DG, 8:4–16, 17:22–18:1.  The day after Sevigny executed her offer letter with DG, EyeWonder's CEO, John Vincent, emailed Choucair and Ginsburg his concerns that DG had hired one of EyeWonder's employees.  See Choucair Depo. Ex. 64.  Vincent stated that he presumed DG's executives were not aware of Unicast hiring a member of EyeWonder's sales team, but that such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

"underhanded business tactics" jeopardized the potential acquisition.  Id.  Upon receiving this email, Ginsburg immediately called Vincent and stated that DG would withdraw its offer letter to Sevigny, only to later discover that Sevigny had already signed the letter.  Ginsburg Depo. at 26:6–29:10; Pl.'s Ex. 90.  In light of Sevigny's signed employment contract, Ginsburg then communicated to Vincent that DG would enforce the non-compete clause against Sevigny, instructing Moore, Unicast's President, to "do his best to comply with the agreement [Sevigny] signed."  Ginsburg Depo. 29:15–30:12; 30:18–31:12; see also Pl.'s Ex. 90 (email from Ginsburg to Vincent) ("I have asked Adam to make sure that this salesperson does not violate your employment handbook regardless of whether California law applies or does not apply").

Sevigny began her employment with Unicast on December 1, 2009, but less than a month later, EyeWonder's General Counsel sent a letter to Sevigny and Moore, demanding that Sevigny and Unicast comply with the restrictive covenants set forth in her EyeWonder employment contract.  The letter further advised that if no response was received from Sevigny and an authorized representative of Unicast by December 29, EyeWonder would consider taking further action.  Moore Depo. 54:23–55:15; Pl.'s Ex. 23.  Upon receiving the EyeWonder letter, Sevigny immediately emailed Tietze, stating that "as we all previously discussed, Unicast's legal team will represent me in all levels should EW decide to pursue this matter."  Moore Depo. at 59:10–60:24; Pl.'s Ex. 24.  Before DG responded to this demand letter, EyeWonder filed suit on December 30, 2009, in Georgia state court against Sevigny, seeking to enforce the arbitration clause contained in Sevigny's agreement and to enjoin her from violating the provisions of her employment agreement pending completion of arbitration.  Choucair Depo. Ex. 67.  EyeWonder also initiated arbitration proceedings against Sevigny.

DG received a copy of the summons and complaint against Sevigny on January 4, 2010, and thereafter Choucair advised Sevigny that DG had spoken with "outside labor counsel" about the matter.  Pl.'s Ex. 68.  On January 8, 2010, EyeWonder filed a motion for an interlocutory injunction in aid of arbitration in the Georgia proceedings, requesting an immediate hearing.  Sevigny Decl. ¶ 11; Pl.'s Ex. 11.  Sevigny asked Choucair for any further updates as to whether outside counsel had been retained on her behalf, but received no immediate response.  Three days later, Moore informed Sevigny that she must retain her own attorney, but that DG would be financially responsible for her legal fees.  Pl.'s Ex. 27; Moore Decl. Ex. A.  Sevigny retained Venable LLP to represent her in the Georgia action, who in turn retained local counsel in Georgia.  Sevigny Decl. ¶ 13;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

Decl. of Richard Frey ¶ 2.  Then on January 14 and 20, 2010 DG entered into written agreements accepting responsibility for paying Sevigny's reasonable attorneys' fees. Pl.'s Exs. 28, 29.

On January 25, 2010, the Georgia court entered an interlocutory injunction, whereby Sevigny was permitted to continue to work at Unicast, but prohibited from soliciting specific Eyewonder customers until November 24, 2010.  Frey Decl. ¶ 3; Pl.'s Ex. 14; Doty Decl. Ex. H.  In an attempt to overturn the injunction, Sevigny's counsel planned to file an appeal; to file a lawsuit in California seeking to declare the non-compete provision unenforceable; and to oppose the arbitration on the grounds that the arbitration provision was unenforceable.  Frey Decl. ¶¶ 4–6.  Venable did in fact file the California action and was successful in getting the arbitration dismissed.  Id. ¶¶ 7–8.

However, on February 24, 2010, DG informed Sevigny's counsel that it would no longer pay for her legal fees as of that date.  Frey Decl. Ex. 34.  Apparently, the legal bills thus far had dramatically exceeded DG and Unicast's expectations, and Unicast believed that it was in everyone's interest to bring the litigation to a close as soon as possible.  Moore Depo. 113:8–16; Choucair Depo. 139:20–140:4.  For Sevigny, however, because she could "not afford" to litigate against EyeWonder without DG's financial backing, she was "forced" into settlement negotiations with EyeWonder.  Sevigny Decl. ¶ 14.  The result of these negotiations was that an amended injunction would remain in place until November 24, 2010, but that Sevigny would be able to solicit a few additional EyeWonder customers than under the terms of the original injunction.  Id. ¶ 15. Thereafter, Sevigny would have no legal restrictions on her employment with Unicast. Although Sevigny was not satisfied with these terms, Moore, Unicast's President and Sevigny's ultimate supervisor, "repeatedly" told Sevigny that she should agree to the proposed settlement, eventually offering to pay $40,000 of her outstanding attorneys' fees if she would do so.  Moore Depo. 128:8–14; 134:11–136:5; Pl.'s Ex. 42.  In April 2010, Sevigny agreed to the proposed settlement with EyeWonder, and the Georgia court entered an amended injunction on May 4, 2010.  SAC ¶ 21; Sevigny Decl. Ex. 15; Frey Decl. ¶ 11.

During the pendency of the amended injunction, Unicast paid plaintiff a guaranteed commission for the first and second quarter of 2010.  Sevigny Depo. 233:6–9; Moore Depo. 128:15–129:3.  Whether or not this guaranteed commission was designed to compensate Sevigny for any adverse effects arising out of the injunction remains in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title    | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

dispute.  However, DG initially refused to make further payments to any of Sevigny's attorneys; not until June 2011 did DG finish paying Sevigny's legal bills, which amounted to nearly $150,000 in total.  Choucair Depo. 123:20–124:8, 124:19–125:1–13.  Plaintiff was not involved in these negotiations over payment between DG's outside counsel and the law firms plaintiff hired to represent her.  Sevigny Depo. 250:5–16.  In addition, the executive who claims he was directly responsible for Sevigny's termination testifies that he did not know the amount of attorneys' fees that were paid on plaintiff's behalf, nor when those fees were paid.  See; Decl. of Caleb Hill ¶¶ 7–8.

In early August 2011, Unicast terminated Sevigny's employment.  Sevigny testifies that no reason was provided, despite her repeated requests.  Sevigny Depo. 250:20–251:2; Sevigny Decl. ¶ 16.  Thereafter, Sevigny commenced this suit against DG.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   ANALYSIS

Defendant moves for judgment in its favor on all three of plaintiff's claims for relief.  Each claim is discussed in turn.

### A.   Negligent Misrepresentation

Negligent misrepresentation is a species of actual fraud, consisting of a "positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."  Cal. Civil Code § 1572(2). Generally, to establish a claim for negligent misrepresentation, a plaintiff must plead "(1) a misrepresentation of a past or existing fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages."  Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986).  However, "predictions as to future events are ordinarily non-actionable expressions of opinion under basic principles of the tort of fraudulent misrepresentation."  Bayview Hunters Point Cmty. Advocates v. Metro. Trans. Comm'n, 366 F.3d 692, 698 (9th Cir. 2004) (internal quotation marks omitted).  In general, "[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury."  PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 931 (9th Cir. 2010) (internal citations omitted).

In support of her claim, plaintiff contends that "both Tietze and Moore unequivocally stated that DG Fastchannel would stand behind Sevigny's hiring, and have its attorneys defend Sevigny against any claim brought by EyeWonder."  SAC ¶ 28; see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

also SAC ¶ 29 (alleging that "Unicast's employees promised and represented to Sevigny that DG Fastchannel would stand behind Sevigny's hiring and provide her with a defense against any action taken by EyeWonder"); Sevigny Decl. ¶ 8 (same).

Defendant first argues that "promises of future conduct," like the purported promise underlying plaintiff's claim here, cannot support the first element of a claim for negligent misrepresentation as a matter of law. Instead, promises of future conduct can only support a claim for intentional fraud, based on the fact that the promisor did not intend to perform at the time the promise was made. Therefore, defendant maintains, there is no tort of "negligent false promise" under California law—the "specific intent requirement precludes pleading a false promise claim as a negligent misrepresentation." Mot. at 10–11 (quoting Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158–159 (1991)). Accordingly, defendant argues that plaintiff's negligent misrepresentation claim predicated on alleged promises of future conduct must fail. See Motohouse Int'l, LLC v. PPG Indus., Inc., 09-cv-1265, 2010 WL 476652, at *2 (S.D. Cal. Feb. 4, 2010) ("A fraud claim based on a defendant's failure to perform a promise must be based on intent not to perform at the time the promise is made.");

The Court disagrees. Plaintiff's allegations do not amount to "promises of future conduct" or predictions as to future events, but instead alleged statements regarding an existing fact: namely, the fact that defendant would "stand behind" her hiring and have "its attorneys defend" her from the moment plaintiff was hired at Unicast. Defendant's employees, Tietze and Moore, whom plaintiff believed were authorized to make these alleged representations in light of their respective positions at Unicast, see Sevigny Depo. 131:20–132:13, were agreeing that defendant would defend plaintiff and stand behind her, both at the time they made their alleged representations and going forward.[2]

---

[2] Plaintiff's negligent misrepresentation claim also appears to be premised on her allegation that defendant's employees represented to her that "the non-compete clause in her EyeWonder Employment Agreement would not in any way impede her ability to work for Unicast." SAC ¶ 26; see also SAC ¶ 8 (alleging that "Unicast represented to Sevigny, on repeated occasions, that the non-compete clause was unenforceable in California" and "no cause for concern"). To the extent that plaintiff relies on these allegations in support of her claim, the Court finds that these alleged statements are also actionable as representations of existing fact. Moreover, even if these statements could

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

Accordingly, because these alleged statements appear to be representations of an existing fact, not a promise of future conduct, the Court finds that plaintiff could prove the first element of her claim for negligent misrepresentation at trial.[3]

Defendant also challenges the second element of plaintiff's claim: that defendant had no reasonable grounds for believing its alleged representations to be true. Fox , 181 Cal. App. 3d at 962. Defendant argues that "all of the evidence" demonstrates that both Tietze and Moore "honestly believed" that they had the proper authorization to make the alleged representations to plaintiff regarding the non-compete provision. Mot. at 15. In support of this contention, defendant notes that plaintiff testified that she believed Tietze and Moore to be authorized. In addition, defendant maintains that it has never claimed that either Tietze or Moore were not authorized to make the representations that they did with either its statements or actions. Id. at 14.

In opposition, plaintiff avers that she could prove that Tietze and Moore lacked a reasonable basis for believing that DG would defend her in the event that EyeWonder sued. First, plaintiff maintains that DG's "lack of any interest" in providing her with a defense to the EyeWonder lawsuit is probative of the unreasonableness of defendant's views at the time such statements were made. Evidence of this disinterest on the part of defendant includes the fact that DG never responded to EyeWonder's demand letter;

_____

be construed as opinions as to future events, the Court finds that plaintiff could prove at trial that these statements may be actionable under the "special knowledge" exception. See Miller v. Yokohama Tire Corp., 358 F.3d 616, 618 (9th Cir. 2003). In particular, plaintiff could prove that defendant's employees purported to have special knowledge of the enforceability of non-compete clauses in California, which would make these statements actionable as representations of existing fact.

[3] In addressing defendant's motion to dismiss plaintiff's FAC, the Court considered whether plaintiff's claim was a statement of opinion that would otherwise be non-actionable as a negligent misrepresentation, unless the "special qualification" exception applied. See Dkt. No. 23 at 5 (discussing Cohen v. S&S Constr. Co., 151 Cal. App. 3d 941, 946 (1983)). The Court did not address—as neither party raised the issue—whether plaintiff's more detailed allegations in her FAC (and now operative SAC) could be construed as representations of existing fact, rather than promises of future conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

Choucair cannot remember whom he spoke with regarding the hiring of "outside counsel," when he represented to plaintiff that such a conversation took place; and ultimately, DG's refusal to provide plaintiff with a defense directly, and instead instructing her to retain her own counsel.  Second, plaintiff contends that the particular circumstances in which Tietze and Moore made these alleged representations demonstrates that neither had a reasonable belief in the veracity of their statements.  With respect to Moore, plaintiff notes that only after EyeWonder threatened suit did Moore ask CEO Ginsburg whether "DG's lawyers" would defend her, or whether she had to retain her own counsel.  With respect to Tietze, plaintiff maintains that by virtue of his position as a Vice President of Sales at Unicast, he clearly lacked the authority to commit DG to provide plaintiff with a defense to a lawsuit.  According to plaintiff, Tietze testified that he knew hiring plaintiff required the involvement and approval Choucair, because of the presence of a non-compete clause in her EyeWonder contract.  Tietze Depo. 47:22–48:21. Yet Choucair only indicated to Tietze that he could "move forward" with making an offer of employment to plaintiff—and apparently made no representations to Tietze regarding what DG's response would be if EyeWonder were to sue plaintiff.  <u>See</u> Tietze Depo. 50:13–25, 59:20–60:13.  Similarly, Moore does not recall receiving any instruction from Choucair as to whether DG would have its lawyers defend plaintiff against an EyeWonder suit.  <u>See</u> Moore Depo. 48:16–49:6.  For these reasons, plaintiff contends that neither Moore nor Neitze had a reasonable basis for allegedly representing to plaintiff that DG's lawyers would defend her in any litigation that was spawned by her employment at Unicast.

The Court agrees with plaintiff that disputed issues of material fact preclude a grant of summary judgment for defendant on this element of plaintiff's claim.  Plaintiff offers substantial circumstantial evidence that Moore and Tietze lacked a reasonable basis for allegedly representing to plaintiff that DG would defend her in the event that EyeWonder sued, as agreeing to provide such a defense appeared to require the approval of Choucair.  Without any evidence in the record that Choucair advised either Moore or Tietze that DG would be willing to have its lawyers defend her in the event that EyeWonder sued, plaintiff could prove that Moore and Tietze should have been aware that they lacked the authority to make a representation to this effect to plaintiff. Defendant's arguments based upon its divergent interpretations of the evidence are without merit.  <u>See</u> Reply at 8.  That Moore eventually executed retainer letters for the Counsel plaintiff sought out for her defense does not prove, as a matter of law, that Moore and Tietze had a reasonable basis for making the alleged representations to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

plaintiff at the time that they did.  Weighing the inferences from the evidence in plaintiff's favor, a rational trier of fact could find that neither Moore nor Tietze had a reasonable belief as to their authority to represent to plaintiff that DG would defend her if EyeWonder brought suit.  Accordingly, defendant's motion for summary judgment on plaintiff's claim for negligent misrepresentation is denied.[4]

## B.    Wrongful Termination in Violation of Public Policy

To state a prima facie claim for retaliation, plaintiff must show that: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.[5]  E.g., Akers v. Cnty of San Diego, 95 Cal. App. 4th 1441, 1453 (Cal. 2002).  An activity is "protected" if it implicates an important public interest that is "tethered to fundamental policies that are delineated in constitutional or statutory provisions."  Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 71 (1998) (internal quotation marks and citation omitted).  Such activities generally fall within one of four categories: "the employee (1) refused to violate a statute; (2) performed a statutory obligation; (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for the public's benefit."  Id. at 76; see also Tameny v. Atlantic Richfield Co., 27 Cal.3d 167 (1988) (recognizing a claim for termination in violation of public policy).

California has adopted the three-stage burden shifting test of McDonnell Douglas v. Green, 411 U.S. 792 (1973), which may also be applied in cases involving alleged

---

[4] In the alternative, plaintiff argues that relief should be granted under Federal Rule of Civil Procedure 56(d), which provides that a court may defer ruling on a motion for summary judgment where a nonmovant demonstrates that it "cannot present facts essential to justify its opposition."  In particular, plaintiff contends that outstanding discovery disputes regarding a second deposition of Tietze have limited plaintiff's ability to obtain further evidence as to Tietze's state of mind at the time he made the alleged representations at issue.  Given the Court's conclusions herein, the Court DENIES plaintiff's request as moot.

[5] It is uncontested that being terminated is an "adverse employment action."  Accordingly, only the first and third prongs of the test are at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|----------|------------------------|------|--------------------|
| Title    | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

retaliatory termination. Once the plaintiff has made a prima facie showing of a retaliatory termination, "the burden then shifts to the employer to offer a legitimate, [nonretaliatory] reason for the adverse employment action." Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999). If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual" to withstand summary judgment. Id. In sum, where "a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly [retaliatory] reasons, summary judgment for the defense is inappropriate." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Assuming that plaintiff can prove a prima facie case of wrongful termination for purposes of this motion, defendant focuses on the second and third stages of the McDonnell Douglas analysis. First, defendant offers evidence that plaintiff was terminated for a legitimate and lawful reason: her failure to meet Unicast's preestablished sales goals. Plaintiff was aware that she was not close to meeting her sales targets before and at the time of her termination and does not appear to dispute as much in opposition. See Sevigny Depo. 246:18–22; see also Hill Decl. Ex. D (plaintiff was meeting 3% of her sales target for 2011 at the time of her termination). This termination occurred in August 2011, defendant maintains, because it wanted to ensure that plaintiff timely received her July commission. See Hill Decl. ¶ 6. Second, defendant argues that plaintiff does not produce evidence of pretext sufficient to overcome defendant's showing of a legitimate and lawful basis for her termination. The fact that plaintiff was terminated in close temporal proximity to the final payment of her attorneys' fees, defendant maintains, does not overcome its showing of a legitimate purpose for plaintiff's termination. Mot. at 18.

The Court concludes that summary judgment for defendant on this claim is inappropriate. At least a potential "rational inference" remains that plaintiff was terminated because DG had to pay substantial attorneys' fees on her behalf. Plaintiff offers an email from Amy Holt, a human resources employee at DG, to James Dillon, the-then President of Unicast, which states that "[w]e plan to let Maria Manalo-Sevigny go, one way or the other, around August 5th," before listing several possible "approaches" to her termination, including an acquisition-related layoff, a performance-related termination, or even suggesting plaintiff could be transitioned to the new acquisition. See Holt Depo. at 36:3–40:24; Pl.'s Ex. 48. That Holt sent the email in question after a decision had purportedly been made to terminate plaintiff, see Hill Decl. ¶ 5–6, does not detract from the possible inferences a jury could make from the evidence in plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | | Date | February 25, 2013 |
|---|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | | |

favor.  Whenever said email was sent, or a response received, a jury could permissibly find that this is evidence of pretext given that defendant at least considered a non-performance based termination as well, or no termination at all.  This is particularly true where plaintiff testifies that DG failed to identify performance as the reason for her termination when it occurred.  Sevigny Decl. ¶ 16.

In addition, the evidence supports an inference that DG was resentful of the prospect of paying plaintiff's legal fees, and in fact terminated plaintiff's employment shortly after the final payment was made.[6]  This again supports plaintiff's claim that defendant's performance-based reasons for terminating plaintiff, while legitimate, were a pretext that masked defendant's dissatisfaction with paying plaintiff's attorneys' fees—which may ultimately be a product of defendant's own alleged representations that enticed plaintiff to join Unicast in the first place.  In short, defendant is unable to demonstrate that, based on the foregoing evidence and the inferences therefrom, no rational factfinder could find for plaintiff on her claim for wrongful termination.  Instead, defendant's arguments concern disputed issues of material fact surrounding who knew what and when with respect to the payment of plaintiff's legal bills, at the time a decision was made to terminate plaintiff.  See Reply at 10–12.  Because conflicting potential inferences from the evidence remain, the Court concludes that summary judgment is inappropriate on this claim.

## C.   Breach of the Covenant of Good Faith and Fair Dealing

Under California law, "every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 55 (2002).  However, a court may not imply a covenant of good faith and fair dealing which contradicts the express terms of a contract.  Id.

---

[6] Defendant's displeasure with the cost of plaintiff's legal representation extended beyond its dispute with Venable and plaintiff's local counsel in Georgia over payment of their fees.  Defendant also allegedly refused to pay Calabrese, the individual who recruited plaintiff on Unicast's behalf, his placement fee, purportedly because of the legal fees that DG had incurred on plaintiff's behalf during her tenure there.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

Defendant contends that plaintiff's claim fails for three reasons. First, defendant argues that plaintiff attempts to impose a covenant of good faith and fair dealing that goes beyond the terms of the parties' contract, which is impermissible under California law. In particular, defendant argues that plaintiff fails to tie her claim of breach to any provision in the parties' contract, as the contract in fact expressly precludes the use of proprietary or trade secret information obtained from a former employer, such as EyeWonder. Second, defendant argues that plaintiff cannot demonstrate that DG's conduct was in any way objectively unreasonable, because defendant at all times acted in good faith in response to legitimate business concerns. This includes defendant's decision to stop funding the EyeWonder litigation midstream, as well as defendant's provision of a guaranteed commission for two quarters. Third, defendant maintains that plaintiff cannot show that she was deprived of any contractual benefit by any purported breach of the covenant. Plaintiff's failure to generate sales, defendant contends, was a product of plaintiff's own failings as a salesperson, not the result of any of defendant's conduct.

The Court finds defendant's arguments in support of its motion unavailing. First, plaintiff offers substantial evidence of alleged conduct that could demonstrate at trial that defendant acted to injure plaintiff's right to receive the benefit of the parties' agreement. For example, according to an email sent by DG's CEO to EyeWonder's CEO, DG planned to actively enforce the non-compete clause of plaintiff's EyeWonder employment agreement, so as not to derail a possible acquisition of EyeWonder by DG. See Ginsburg Depo. 29:15–31:12; Pl.'s Ex. 90. Moreover, plaintiff was prohibited from even contacting her former EyeWonder customers, whether or not to solicit sales, and was prohibited from contacting new potential customers in the Los Angeles area. Sevigny Decl. ¶ 17. And after two months of defending against litigation brought by EyeWonder, plaintiff claims that she was pressured to agree to the amended injunction that EyeWonder proposed, with further payment to her attorneys conditioned on her agreement. Plaintiff's theory, in sum, is that she was hired to sell advertising—with over fifty percent of her compensation tied to her success in doing so—and yet defendant allegedly actively frustrated her ability to do so by enforcing its competitor's non-compete clause. Defendant offers nothing on this motion to challenge plaintiff's showing that this conduct, if proven, would frustrate the apparent core purpose of plaintiff's employment with defendant. See Reply at 13. Moreover, this same evidence defeats defendant's claim that it did not act "objectively unreasonable" as a matter of law. Whether defendant's actions noted above—in addition to defendant's decision to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9197-CAS (JEMx) | Date | February 25, 2013 |
|---|---|---|---|
| Title | MARIA SEVIGNY V. DG FASTCHANNEL, INC. | | |

announce that it would stop funding plaintiff's defense in February 2011—were reasonable or not presents a question of fact for the jury.

Defendant's argument that plaintiff cannot show that she was deprived of any contractual benefit by any purported breach is similarly unavailing.  In particular, disputed issues of material fact remain as to the degree to which defendant's alleged conduct interfered with plaintiff's ability to be an effective salesperson and earn commissions.  Whether or not there may have been other issues that contributed to plaintiff's below-target sales numbers, the Court cannot determine as a matter of law that plaintiff was not deprived of *any* benefit of her employment contract by virtue of defendant's alleged conduct.  Accordingly, the Court concludes that defendant's motion is denied for plaintiff's breach of the covenant of good faith and fair dealing claim.

**V.    CONCLUSION**

In accordance with the foregoing, the Court DENIES defendant's motion for summary judgment.

IT IS SO ORDERED.

| | 00 | : | 12 |
|---|---|---|---|
| Initials of Preparer | MS | | |